**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 25-1258**

---

LIZBEYDE YANEZ PIEDRA,

Petitioner,

v.

TODD BLANCHE, Attorney General,

Respondent.

--------------------------------------

IMMIGRANT DEFENSE PROJECT,

Amicus Supporting Petitioner.

---

On Petition for Review of an Order of the Board of Immigration Appeals.

---

Argued: March 18, 2026 Decided: August 24, 2026

---

Before DIAZ, Chief Judge, RICHARDSON, Circuit Judge, and KEENAN, Senior Circuit Judge.

---

Petition for review granted in part and denied in part by published opinion. Judge Richardson wrote the opinion, in which Chief Judge Diaz and Judge Keenan joined.

---

**ARGUED:** Benjamin Ross Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner. Jonathan Stephen Needle, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Allison Lukanich, LAW OFFICE OF ALLISON LUKANICH, Wake Forest, North

Carolina, for Petitioner. Brett A. Shumate, Assistant Attorney General, Stephen J. Flynn, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Andrew Wachtenheim, THE LEGAL AID SOCIETY, New York, New York; Nabilah Siddiquee, Elena Noureddine, IMMIGRANT DEFENSE PROJECT, New York, New York, for Amicus Curiae.

RICHARDSON, Circuit Judge:

For decades, *Chevron* deference restricted courts from exercising their duty "to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). Newly freed from that restraint, courts now exercise their independent judgment about the best meaning of statutes. The practical change will often be modest. But other times, a fresh read will mark a sharp break with past practice. This is that type of case.

Courts and agencies have long struggled with how to analyze the immigration effects (if any) of a vacated conviction. Eventually, agency practice cobbled together a framework that sought to balance policy priorities. Under that framework, a conviction vacated because of a substantive or procedural defect in the underlying proceedings no longer qualifies as a conviction for immigration purposes, while a conviction vacated for rehabilitation, immigration hardship, or another reason still does. Many courts deferentially accepted that distinction. But the statute we apply here does not make the continuing effect of a vacated conviction turn on the state court's reason for vacating it. It makes inadmissible "any alien convicted of" the relevant offense. 8 U.S.C. § 1182(a)(2)(A)(i). In this case, the petitioner's conviction was vacated and her charge dismissed. At that point, she was no longer "convicted of" that offense. So we grant in part the petition for review.

## I. BACKGROUND

Petitioner Lizbeyde Yanez Piedra, a native and citizen of Mexico, petitions this Court for review of a final order of removal issued by the Board of Immigration Appeals. Yanez Piedra came to the United States as a child and has lived here since. In 2006, shortly

after becoming a lawful permanent resident, Yanez Piedra was convicted of three crimes in North Carolina state court. In one proceeding, she was convicted of two counts of common-law forgery. In another, she pleaded guilty to possession of marijuana.[1]

After completing her noncustodial sentences for those offenses, Yanez Piedra remained in the United States for several years. Customs officers later issued her a notice to appear when she returned to the United States after a 2013 visit to Mexico. In removal proceedings, Yanez Piedra conceded inadmissibility as an "alien convicted of" a controlled-substance offense and a crime involving moral turpitude. *See* 8 U.S.C. § 1182(a)(2)(A)(i). But she sought a waiver under § 1182(h), which gives the Attorney General discretion to waive application of certain controlled-substance and moral-turpitude grounds of inadmissibility.

The immigration judge found that Yanez Piedra did not qualify for a waiver of either ground of inadmissibility. Three findings barred relief. First, to be considered for a waiver of a controlled-substance offense, an applicant must show that the relevant offense involved 30 grams or less of marijuana. *See* 8 U.S.C. § 1182(h). Yanez Piedra failed to do so, the immigration judge concluded, because the statutory upper range of her conviction exceeded 30 grams and the evidence in the case implicated more than 10 pounds of marijuana. Second, to receive a waiver of either a controlled-substance offense or a crime involving moral turpitude, Yanez Piedra needed to show that failure to admit her to the United States would cause "extreme hardship" to one of her resident family members.

[1] Her guilty plea was for possession of between one-half and one-and-a-half ounces of marijuana. *See* N.C. Gen. Stat. § 90-95(d)(4).

*See id.* The immigration judge found no such extreme hardship. Finally, even if she had met the preconditions, the immigration judge held that Yanez Piedra did not merit a waiver as a matter of discretion. So the immigration judge denied her waiver request. But the immigration judge granted Yanez Piedra's request for voluntary departure. *See* 8 U.S.C. § 1229c(b).

Yanez Piedra appealed to the Board of Immigration Appeals, arguing that the immigration judge erred across the board. But while the Board considered her appeal, Yanez Piedra asked a North Carolina state court to vacate her marijuana conviction. The court obliged, and the state dismissed the underlying charge. Given her now-vacated conviction, Yanez Piedra asked the Board to remand the case to the immigration judge for further consideration.

The Board dismissed Yanez Piedra's appeal and denied her motion to remand. The Board did not adopt the immigration judge's opinion. In its independent analysis, the Board focused on the vacated marijuana conviction. Applying its framework for analyzing vacated convictions, *see Matter of Pickering*, 23 I. & N. Dec. 621 (BIA 2003), the Board concluded that Yanez Piedra's marijuana conviction was still valid for immigration purposes. The Board then affirmed the immigration judge's conclusion that Yanez Piedra was statutorily barred from receiving a waiver because she could not establish that her conviction involved 30 grams or less of marijuana. Based on her failure to qualify for a waiver, the Board expressly declined to address Yanez Piedra's other arguments.

Yanez Piedra timely petitioned this Court for review of her final order of removal. Her petition raises two main issues. First, she argues that the Board erred in denying her

motion to remand based on its conclusion that her vacated marijuana conviction still counted against her. This is true, she argues, under the Board's *Pickering* framework—which still considers convictions valid for immigration purposes unless they are vacated for substantive or procedural defects in the underlying proceedings. She alternatively challenges *Pickering* head-on, arguing that no vacated conviction should still count for immigration purposes under the Immigration and Nationality Act. *See* § 1182(a)(2)(A)(i). Second, Yanez Piedra argues that the regulations governing the timing of voluntary departure are arbitrary and capricious.

## II. DISCUSSION

Although we generally lack jurisdiction to review final orders of removal against "criminal aliens," *see* 8 U.S.C. § 1252(a)(2)(C), we have jurisdiction over legal questions raised in a petition for review. *See* § 1252(a)(2)(D). Because Yanez Piedra raises only legal questions, we have jurisdiction over her petition. *See Ibarra v. Bondi*, 136 F.4th 63, 67 n.3 (4th Cir. 2025). The Board did not adopt the immigration judge's decision, so we focus our review on the Board's decision and do not consider the alternative justifications that the immigration judge provided. *Herrera-Alcala v. Garland*, 39 F.4th 233, 244 (4th Cir. 2022). We review the Board's legal conclusions de novo. *Id.*

We first address Yanez Piedra's argument that her vacated marijuana conviction does not make her inadmissible. We then consider her challenge to the voluntary-departure regulations.

### A. A Vacated Conviction Does Not Establish Inadmissibility Under § 1182(a)(2)(A)(i)

Yanez Piedra argues that her vacated conviction for possession of marijuana does not make her an "alien convicted of" a controlled-substance violation. *See* 8 U.S.C. § 1182(a)(2)(A)(i). We agree. The Board's reason-for-vacatur framework cannot govern because it conflicts with the statute's best reading. Before interpreting the statute, however, we address the Government's arguments that Yanez Piedra failed to exhaust this claim and that circuit precedent forecloses it.

#### 1. Yanez Piedra has exhausted all administrative remedies available to her as of right

Yanez Piedra argues for the first time before this Court that the Board's framework for analyzing vacated convictions, *see Pickering*, 23 I. & N. Dec. 621, is inconsistent with the statutory framework. The Government argues that her failure to make this argument before the Board forecloses her challenge. We disagree.

"A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). This exhaustion requirement is not jurisdictional. *See Lopez-Benitez v. Garland*, 91 F.4th 763, 769 (4th Cir. 2024). But it is still mandatory where, as here, the Government asserts it. *Id.* The question is whether the Board or the Attorney General—through review available to Yanez Piedra as of right—could grant the relief her present argument seeks. Neither

could.[2]

One potential way the Board might be able to provide relief is by overturning its own precedent. And it is true that the Board may generally do that. *See* 8 C.F.R. § 1003.1(g)(1). But here, the Attorney General endorsed the *Pickering* rule and extended it to "all forms of sentence alterations." *See Matter of Thomas & Thompson*, 27 I. & N. Dec. 674, 685 (A.G. 2019). Attorney General decisions bind the Board. *See* 8 C.F.R. § 1003.1(g)(1). And referral to the Attorney General for reconsideration depends on action by the Attorney General, the Board, or designated Department of Homeland Security officials; Yanez Piedra had no right to it. *See* § 1003.1(h)(1). Because that form of review is discretionary, it is not a remedy available "as of right." *See Santos-Zacaria v. Garland*, 598 U.S. 411, 424–27 (2023). Section 1252(d)(1) therefore did not require Yanez Piedra to exhaust this argument, and we consider it on the merits.

### 2. We must apply the best reading of the statutory text

The Government argues that circuit precedent requires us to apply the Board's framework for evaluating vacated convictions. But that's wrong.

For decades, courts were required to defer to an agency's reasonable interpretation of an ambiguous statute. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). But in *Loper Bright Enterprises v. Raimondo*, the Supreme Court dismantled the *Chevron* regime. 603 U.S. 369, 412–13 (2024). Rather than defer to agency

[2] Although the exhaustion statute speaks in terms of "remedies," our Court applies the statute to require the exhaustion of individual arguments. 8 U.S.C. § 1252(d)(1); *see Shaw v. Sessions*, 898 F.3d 448, 456 (4th Cir. 2018) ("To fail to raise a legal theory before the Board is to abandon that theory.").

interpretations, courts must now "exercise their independent judgment" and apply the "best reading" of a statute. *Id.* at 400, 412. In other words, when evaluating a statute on a blank slate, courts must themselves interpret the statute.

It is less clear, however, how we should approach a case when our Court has previously deferred to an agency interpretation of the relevant statute. In *Loper Bright*, the Supreme Court explained that its decision did "not call into question prior cases that relied on the *Chevron* framework." *Id.* at 412. So the "holdings of those cases that specific agency actions are lawful . . . are still subject to statutory *stare decisis*" after *Loper Bright*. *Id.* Courts across the country—ours included—have grappled with how to reconcile these statements with the general rule that a court "may not defer to an agency interpretation of the law simply because a statute is ambiguous."[3] *Id.* at 413. But we need not settle this debate today.

The Government argues that we are bound to apply the Board's *Pickering* framework because we applied it in an earlier case. *See Phan v. Holder*, 667 F.3d 448,

[3] We could read the Court's instructions in one of several ways. First, we might give precedential effect broadly to the reasoning underlying a decision that relied on *Chevron*. Under this view, if a prior decision found reasonable an agency's interpretation of a statute, we would be bound to continue applying that interpretation. Second, we might give precedential effect to an earlier *Chevron* decision only as it applies to the specific agency action in question. So a *Chevron* decision within an agency adjudication would bind us within only that adjudication. But there's a third potential reading. The Supreme Court suggested that the holdings of earlier cases that relied on *Chevron* "are still subject to statutory *stare decisis*." *Loper Bright*, 603 U.S. at 412. Our Court is not normally in the business of applying the Supreme Court's stare decisis factors—instead applying the strict rule of panel precedent. But perhaps we should take the Supreme Court at its word and begin applying stare decisis factors to earlier cases that relied on *Chevron*.

Our Court has not yet settled on an approach, and this isn't the case to do so. But eventually we must wrestle with these difficult questions.

452–53 (4th Cir. 2012). But *Phan* does not bind us. In *Phan*, U.S. Citizenship and Immigration Services denied an application for naturalization based on a conviction that had been "set aside" (not vacated) under D.C. law. *Id.* at 450. The relevant statute there prevented a person "who, . . . *at any time* has been convicted of an aggravated felony" from being naturalized. *Id.* at 451–52 (emphasis added) (quoting 8 U.S.C. § 1101(f)(8)). Our Court found it "appropriate" to apply the Board's *Pickering* framework to that statute after noting that it "enjoy[ed] broad support among our sister circuits." *Id.* at 452–53.

Thus, *Phan* applied the *Pickering* framework to a materially different statute and a different set of facts involving a different agency. And our Court has never applied *Pickering* to the statute we face today in a published opinion.[4] So we are not bound to apply *Pickering*.

**3. Yanez Piedra is not now an "alien convicted of" a controlled-substance offense**

The Board concluded that Yanez Piedra's marijuana conviction made her inadmissible despite the fact that the state court had since vacated it. In doing so, it erroneously applied a legal framework that conflicts with the statutory text and the background principles against which Congress wrote.

Start with the text. Section 1182(a)(2)(A)(i) makes inadmissible "any alien

[4] Our Court applied *Pickering* in an unpublished decision. *See Parikh v. Gonzales*, 155 F. App'x 635 (4th Cir. 2005). But we are not bound by unpublished opinions. *Koontz v. SN Servicing Corp.*, 133 F.4th 320, 327 (4th Cir. 2025).

convicted of" a controlled-substance offense.[5] Section 1101(a)(48)(A), in turn, defines "conviction" to include "a formal judgment of guilt of the alien entered by a court."[6] Yanez Piedra's original judgment satisfied that definition. But unlike in *Phan*, the disputed question is not whether she was once convicted. It is whether she is an "alien convicted of" the offense.

We might read the phrase "any alien convicted" in two different ways. First, we could read the phrase as "any alien *who currently stands* convicted" of an offense. This reading—the legal-status reading—rests on the view that the phrase describes a current characteristic of the alien: that she is a "convicted" alien. Alternatively, we could read the phrase "any alien convicted" to mean "any alien who *at any time has* been convicted"—the historical-fact reading.

Looking at the text alone, one might think that the historical-fact reading fits better. "Convicted" is a past participle, after all. But plain-language examples suggest otherwise. If you asked an alien whether she is "convicted of" a given offense, you would not expect

---

[5] Alongside § 1182(a)(2)(A)(i)'s "convicted of" clause, the statute also makes inadmissible "any alien . . . who admits having committed, or who admits committing acts which constitute the essential elements of" a covered offense. We express no view on whether these clauses independently support inadmissibility here. The Board did not rely on them, and we leave that question, like the others it did not reach, for remand.

[6] Section 1101(a)(48)(A) defines "conviction" in full:

> [A] formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

an alien with only a vacated conviction to raise her hand. That's because when you ask her, she is no longer convicted. In order to get the alien to acknowledge her vacated conviction, you would instead need to ask if she has "at any time been convicted of" a given offense.

In this context, the term "convicted" is acting as a past participle. Consider how other past participles—like "married," "licensed," or "employed"—might be understood in various contexts. If a restaurant extends a military discount to "any person married to an active-duty service member," we would not expect a soldier's ex-wife to receive a discount. If an airline limits its pilot applications to "any person licensed to fly commercial airplanes," a person whose license has lapsed should not expect a callback. And if a company provides a year-end bonus to "any person employed full-time by the company," the company need not give a bonus to a part-time employee who used to work full-time. In each example, the text and context of the policy suggest that the relevant characteristic must *currently* apply. We read the plain language of § 1182(a)(2)(A)(i) the same way: "any alien convicted of" a controlled-substance offense raises a legal-status question.

Statutory context further supports this reading. Elsewhere in the Immigration and Nationality Act, Congress has used language that lends itself more naturally to a historical-fact reading. For example, in the statute at issue in *Phan*, Congress defined a "person of good moral character" for immigration purposes to exclude "one who *at any time* has been convicted of an aggravated felony." *See* 8 U.S.C. § 1101(f)(8) (emphasis added). Had the statute here included the phrase "at any time," our analysis might look different. But it doesn't. And when Congress uses different words in the same act, we have some tendency

to think that the difference is meaningful. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 25 (2012).

Background legal principles support the legal-status reading, too. "When interpreting statutes, we 'recognize that Congress legislates against the backdrop' of certain unexpressed presumptions." *Hewitt v. United States*, 606 U.S. 419, 431 (2025) (cleaned up) (quoting *Bond v. United States*, 572 U.S. 844, 857 (2014)). In *Hewitt*, the Supreme Court identified one such background presumption: "that vacated court orders are void *ab initio* and thus lack any prospective legal effect." *Id.* The Court analyzed a statute that applied new sentencing rules to a criminal offense "if a sentence for the offense has not been imposed." *Id.* at 424. The Court concluded that the background vacatur principle supported a legal-status reading of the phrase "has not been imposed." *Id.* at 431–33. So a defendant whose sentence had been vacated before resentencing is entitled to be sentenced under the new rules. The Court also explained how the vacatur principle plays out in the conviction context: "A criminal defendant whose judgment of conviction has been vacated, for example, is to be treated going forward as though he were never convicted." *Id.* at 431. Under this principle, a person whose only conviction has been vacated is not a "person convicted of" anything.

The vacatur principle from *Hewitt* is far from new. In *Lewis v. United States*, for example, the Supreme Court addressed a federal firearms restriction that applied to any person who "has been convicted by" a state or federal court "of a felony." 445 U.S. 55, 60 (1980). The Court first acknowledged the breadth of the statute: "No modifier is present, and nothing suggests any restriction on the scope of the term 'convicted.'" *Id.* Still, the

Court read in an implicit exception for vacated convictions. *Id.* at 61 n.5 (relying on the "common-sense notion that a disability based upon one's status as a convicted felon should cease only when the conviction upon which that status depends has been vacated"). So although the Court held there was no exception for a conviction that may someday be vacated, the statute did not cover a vacated conviction. The same is true here.

Rather than analyzing the meaning of "any alien convicted," the parties primarily focus their attention on the statutory definition of "conviction." *See* 8 U.S.C. § 1101(a)(48)(A). The Government argues that this definition adopts a special federal usage of the term "conviction" that includes some (but not all) vacated convictions. But the statutory definition of "conviction" nowhere addresses vacated convictions. Nor does it address the effect of other post-conviction relief. Because the Government's position is short on textual support, we reject it.

The statutory definition starts with a traditional definition of the term: "a formal judgment of guilt of the alien entered by a court." *Id.*; *see Conviction*, Black's Law Dictionary (7th ed. 1999) ("The judgment . . . that a person is guilty of a crime"). It then adds to the traditional definition certain withheld judgments—where the facts required to find a defendant guilty are established but a formal judgment of conviction is not entered. But there is no reason to think that this definition—which nowhere contemplates the effect of vacatur—abrogates the background vacatur principle outlined in *Hewitt*. And we know that the vacatur principle normally applies to convictions. *See Hewitt*, 606 U.S. at 431 ("A criminal defendant whose judgment of conviction has been vacated, for example, is to be

treated going forward as though he were never convicted."); *Lewis*, 445 U.S. at 61 n.5. We thus read the statutory definition of "conviction" in light of the vacatur principle.

When asking whether a person is an "alien convicted of" a controlled-substance offense under § 1182(a)(2)(A)(i), a court may not consider vacated convictions.[7] So the Board erred when it concluded otherwise.

#### 4. *Pickering* is inconsistent with § 1182(a)(2)(A)(i) as applied to vacated convictions

The Government argues that the best reading of the statute requires us to follow the Board's *Pickering* framework. Before rejecting that argument, some background is required.

For years, the Board struggled to determine the effect of post-conviction orders on otherwise-valid convictions. In a series of decisions, the Board addressed convictions that had been vacated (or otherwise altered). The Board eventually developed a rule to determine whether a vacated conviction still counts as a conviction for immigration purposes. The Board explained that rule in *Pickering*, which has since been cited as the Board's governing authority. *See* 23 I. & N. Dec. 621. Simply put, the rule is this: A vacated conviction still counts against an alien unless it is vacated for a "defect in the underlying criminal proceedings." *Id.* at 624. So a conviction vacated for rehabilitative purposes—or to avoid immigration consequences—still counts as a conviction even though it is no longer on any court's books. *Id.* The Attorney General has since extended this

[7] To be clear, we do not address how vacated convictions may be treated under other statutes, such as 8 U.S.C. § 1101(f)(8). Nor do we address convictions that have been expunged, set aside, or otherwise modified.

distinction to "state-court orders that modify, clarify, or otherwise alter a criminal alien's sentence." *Thomas*, 27 I. & N. Dec. at 674.

In *Pickering*, the Board noted that several federal circuits had taken similar approaches. *See* 23 I. & N. Dec. at 623–24 (first citing *Herrera-Inirio v. INS*, 208 F.3d 299, 306 (1st Cir. 2000); then citing *United States v. Campbell*, 167 F.3d 94, 98 (2d Cir. 1999); and then citing *Zaitona v. INS*, 9 F.3d 432, 436–37 (6th Cir. 1993)). And since *Pickering* was decided, most federal circuits have adopted its framework.[8]

But after *Loper Bright*, our job is neither to count judicial noses nor to defer to an agency's statutory interpretation. While the *Pickering* framework may make for good policy, good policy doesn't always make for good statutory interpretation. That's the case here. Few courts that have adopted *Pickering* have engaged in any meaningful analysis of the statutory text. Still, we engage below with the best versions of *Pickering*.

The courts that apply the *Pickering* distinction largely rely on the history of the statutory definition of "conviction." Before 1996, the Immigration and Nationality Act did not define "conviction." Operating in the void, the Board held that most (but not all) vacated convictions could not count against an alien for immigration purposes. But without a statutory definition of "conviction," it was unclear how to treat various state rehabilitative

[8] *See, e.g.*, *Saleh v. Gonzales*, 495 F.3d 17, 24–25 (2d Cir. 2007) (applying *Chevron* deference to the *Pickering* framework); *Pinho v. Gonzales*, 432 F.3d 193, 215 n.29 (3d Cir. 2005) (same); *Ali v. Ashcroft*, 395 F.3d 722, 728–29 (7th Cir. 2005) (same); *see also Andrade-Zamora v. Lynch*, 814 F.3d 945, 948 (8th Cir. 2016) (applying *Pickering* without thorough statutory interpretation); *Rumierz v. Gonzales*, 456 F.3d 31, 39–41 (1st Cir. 2006) (same); *Nath v. Gonzales*, 467 F.3d 1185, 1188–89 (9th Cir. 2006) (same); *Cruz-Garza v. Ashcroft*, 396 F.3d 1125, 1128–29 (10th Cir. 2005) (same).

mechanisms for dealing with criminal behavior—such as withheld judgments and deferred dispositions. The Board eventually changed course in hopes of bringing more state criminal adjudications within the definition of a "conviction." *See Matter of Ozkok*, 19 I. & N. Dec. 546 (BIA 1988). In *Ozkok*, the Board adopted a three-part definition of "conviction" that was designed to sweep in a swath of state sanctions—explicitly including withheld judgments. *Id.* at 551–52. This definition did not address vacated convictions but widened the set of adjudications that the Board would consider.

Congress largely adopted the *Ozkok* definition when it passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *See* Pub. L. No. 104-208, 110 Stat. 3009-546 (1996). In fact, its two-part definition was broader than *Ozkok*'s definition. *See* 8 U.S.C. § 1101(a)(48)(A). On top of classic convictions—where "a formal judgment of guilt" is "entered by a court"—the new definition included situations in which "adjudication of guilt has been withheld" if a factual finding of guilt has been made and the judge has ordered some punishment. *Id.*

While Congress did not address vacated convictions in its definition, some courts understand the statutory definition of "conviction" to move the needle. *See, e.g.*, *Pinho*, 432 F.3d at 207–10. Because including withheld judgments within the statutory definition focuses on the initial finding of guilt—and not the ultimate judgment—courts have deduced that Congress cared most about the initial determination of guilt. *Id.* In this way, courts have "analogized from deferred adjudications to vacated convictions." *Id.* at 207. The reasoning goes that because Congress tried to close one loophole (withheld judgments), it must have also intended to close another (vacated judgments). And, because

the treatment of withheld judgments does not focus on a state's own entry of a final judgment of guilt, Congress seemingly separated the federal understanding of a conviction from state law. Moreover, the theory goes, it would make little sense to defer to a state's decision to *vacate* a conviction when the statute does not require deference to a state's decision to *enter* a conviction in the first instance.

But courts following this approach don't apply it consistently. Despite their focus on the initial finding of guilt, these courts follow *Pickering*'s lead in not counting a conviction if it has been vacated because of a substantive or procedural defect in the underlying criminal proceeding. In *Pinho*, the Third Circuit accepted that the Board "has not explained precisely why it thinks substantive vacaturs do not fit the" statutory definition of a conviction. *Id.* at 209. But it thought the distinction reasonable because it concluded that convictions vacated for rehabilitative purposes were relevantly similar to withheld adjudications. *Id.* at 210. "Substantive vacaturs," on the other hand, went to the heart of the conviction and did not suffer from the same opportunity for gamesmanship. *Id.* at 209.

While we understand this line of reasoning, we cannot endorse it. The statutory definition of "conviction" does not allow it. There is no statutory basis for asking *why* the state court acted and distinguishing between substantive defects and rehabilitative purposes. The effort to focus on state-court motive boils down to a policy judgment and an attempt to divine what Congress *would do* if faced with the question of vacated judgments. But that's not how statutory interpretation works. *See* Scalia & Garner, *Reading Law* § 60 (rejecting the "false notion that when a situation is not quite covered by

a statute, the court should reconstruct what the legislature would have done had it confronted the issue").

Before concluding, we note that the Fifth Circuit has taken a third approach. Rather than conclude that *no* vacated convictions count as convictions for immigration purposes, it held that *all* vacated convictions count. *See Renteria-Gonzalez v. INS*, 322 F.3d 804, 812–13 (5th Cir. 2002).[9] The court asserted that "the text, structure and history of the INA suggest that a vacated federal conviction does remain valid for purposes of the immigration laws." *Id.* The court started with the proposition that by defining "conviction," Congress displaced its "intuitive, popular, or commonsense understanding." *Id.* at 813. The court then reasoned that the lack of any statutory exception for vacated convictions "strongly implies that Congress did not intend any such exception." *Id.* Finally, the court pointed out that Congress had elsewhere created an exception for some pardoned offenses—which suggested that "Congress knew how to write exceptions for certain kinds of post-conviction relief." *Id.*

The Fifth Circuit's position has the virtue of consistency—it treats all vacated convictions the same. The statute doesn't distinguish between types of vacated convictions, and the Fifth Circuit doesn't either. But its virtues end there. Its argument is built on the foundational idea that Congress displaced the common understanding of a conviction. But that foundation crumbles under pressure. Although Congress

[9] The Fifth Circuit later accepted the government's abandonment of the *Renteria-Gonzalez* approach. *See Gaona-Romero v. Gonzales*, 497 F.3d 694, 695 (5th Cir. 2007) (per curiam).

*supplemented* the common definition of a conviction, it did not *uproot* it. The common definition—"a formal judgment of guilt . . . entered by a court"—is still at the heart of the statute. And, in line with *Hewitt*, it is appropriate to read that common definition in light of the background vacatur principle. *See* 606 U.S. at 431. So we reject the Fifth Circuit's approach.

With great respect for our sister circuits, we decline to follow *Pickering*. We instead conclude that an alien is not inadmissible under § 1182(a)(2)(A)(i) based on a vacated conviction. The Board's conclusion to the contrary was legal error, and we vacate its decision.

### B. The Voluntary-Departure Regulations Are Not Arbitrary And Capricious

We briefly address Yanez Piedra's second claim. She argues that the regulations dealing with the timing of voluntary departure after the filing of a petition for review are arbitrary and capricious.[10] We disagree.

"Voluntary departure is a discretionary form of relief that allows certain favored aliens—either before the conclusion of removal proceedings or after being found deportable—to leave the country willingly." *Dada v. Mukasey*, 554 U.S. 1, 8 (2008). Congress gave the Attorney General broad discretion to grant voluntary departure. *See* 8 U.S.C. § 1229c. And the "Attorney General may by regulation limit eligibility for voluntary departure . . . for any class or classes of aliens." § 1229c(e). But ultimately,

[10] Whether an agency action is arbitrary and capricious is a legal question. *See, e.g.*, *Univ. Med. Ctr. of S. Nev. v. Shalala*, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999).

voluntary departure is "available to noncitizens only as a matter of grace, not entitlement." *Santos-Zacaria*, 598 U.S. at 426.

Voluntary departure granted after removal proceedings usually lasts 60 days, the statutory maximum. *See* 8 U.S.C. § 1229c(b)(2). That gives an alien 60 days to depart the country once the final order of removal is entered. But under existing regulations, a grant of voluntary departure automatically terminates when an alien petitions a federal court of appeals for review. *See* 8 C.F.R. § 1240.26(i). After termination, the government gives a 30-day grace period: An alien is not treated as leaving under an order of removal if she departs within 30 days after the petition is filed. *Id.* Because a petition for review must be filed within 30 days of the relevant Board decision, *see* 8 U.S.C. § 1252(b)(1), an alien who waits the full 30 days to file her petition effectively receives the normal 60-day departure window. But when an alien files early—as Yanez Piedra did here—she will end up with fewer than 60 days to depart.

Yanez Piedra argues that this regulatory scheme is arbitrary and capricious because it seems to penalize those who file their petitions for review early. *See* 5 U.S.C. § 706(2)(A); *Judulang v. Holder*, 565 U.S. 42, 52–53 (2011) (holding a Board framework arbitrary and capricious in a petition for review). She does not challenge the Attorney General's authority to promulgate the regulations. And she does not challenge the automatic termination of voluntary departure per se. She challenges only the fact that the 30-day grace period benefits those who wait longer to file their petitions for review.

Yanez Piedra has not shown that this regulatory scheme is arbitrary and capricious. *See Garfias-Rodriguez v. Holder*, 702 F.3d 504, 528 (9th Cir. 2012) (en banc). "Voluntary

departure represents a quid pro quo between the alien and the government." *Id.* The government gets a cheaper, faster departure, and the alien avoids some of the consequences of removal. It is reasonable for the Attorney General to terminate the grant of voluntary departure when an alien chooses to continue trying to remain in the country. *Id.*; *see also* Voluntary Departure: Effect of a Motion To Reopen or Reconsider or a Petition for Review, 73 Fed. Reg. 76,927, 76,932 (Dec. 18, 2008) (explaining that the grant of voluntary departure automatically terminates both to encourage aliens to pursue their petitions outside of the country and to ensure national uniformity). That the Attorney General chose to extend a grace period does not make that decision less reasonable. Instead, it puts the timing of departure in the alien's hands: If an alien wants to maximize the length of her stay, she can wait longer to petition for review.

* * *

The Board's framework for analyzing vacated convictions may make good policy, but it is not the result of good statutory interpretation. Because Yanez Piedra's drug conviction has been vacated, she is not now an "alien convicted of" a controlled-substance offense. The Board's decision denying remand thus rested on an incorrect legal conclusion. So Yanez Piedra's first challenge succeeds.[11] But her second challenge fails, because the regulations dealing with the timing of voluntary departure are reasonable.

[11] None of this is to say that the immigration judge erred in finding that Yanez Piedra was an "alien convicted of" a controlled-substance offense. After all, Yanez Piedra conceded removability, and the state court didn't vacate the conviction until after the immigration judge's decision. We review only the Board's analysis. *See Herrera-Alcala*, 39 F.4th at 244. So we do not decide a host of other issues, such as the relevant timeframe (Continued)

*PETITION GRANTED IN PART AND DENIED IN PART*

---

for deciding whether an alien is "convicted of" an offense under § 1182(a)(2)(A)(i)—when the alien applies for admission, when the immigration judge reaches a decision, or when the Board issues its decision. Like other questions left open here (including the effect, if any, of Yanez Piedra's initial concession of removability), we leave that question for the agency to decide in the first instance.